IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MIKE YARBER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-06-680-M |
| ) | |
| MICHAEL ASTRUE, ) | |
| Commissioner, Social ) | |
| Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Mike Yarber seeks judicial review of a denial of benefits by the Social Security Administration ("SSA"). The Court should reverse the SSA's decision and remand for an award of disability insurance payments.

I.   BACKGROUND

Mr. Yarber applied for insurance benefits and the SSA denied the application initially and on reconsideration. Administrative Record at pp. 42-43, 62-64 (certified Aug. 9, 2006) ("Rec."). Two administrative hearings occurred,[2] followed by two decisions denying

---

[1]   In the complaint, Ms. Jo Anne B. Barnhart was named as the defendant. During the pendency of the action, Mr. Michael Astrue became the Commissioner of the Social Security Administration. Thus, the Court substitutes Mr. Astrue as the defendant. *See* Fed. R. Civ. P. 25(d)(1) ("When a public officer is a party to an action in his official capacity and during its pendency . . . ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party."); *see also* 42 U.S.C. § 405(g) (2000) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

[2]   *See* Rec. at pp. 646-85.

benefits[3] and two remands by the Appeals Council.[4]  A third hearing took place,[5] and an administrative law judge found that Mr. Yarber was not disabled in light of his ability to work.[6]  The Appeals Council declined jurisdiction,[7] and the present action followed.

In part, Mr. Yarber alleges a failure to comply with the "treating source rule" and the Appeals Council's second remand order.[8]  The Plaintiff is correct and the errors should lead to reversal and remand for an award of benefits.

II.     STANDARD OF REVIEW

The Court must determine whether the SSA's decision is based on substantial evidence and the correct legal standard.  *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  If the SSA's decision lacks substantial evidence or is based on an incorrect legal standard, reversal is necessary.  *See Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984); *see also Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) ("if the [administrative law judge] failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence").

---

[3]     Rec. at pp. 188-204, 279-84.

[4]     Rec. at pp. 214-16, 286-88.

[5]     *See* Rec. at pp. 686-706.

[6]     Rec. at pp. 22, 26-27.

[7]     Rec. at pp. 11-15.

[8]     The Plaintiff also alleges other errors, but the Court need not address them in light of the suggestion for reversal and remand for an award of benefits.

III.   FAILURE TO COMPLY WITH THE "TREATING SOURCE RULE" AND APPEALS COUNCIL'S REMAND ORDER

Following the second administrative hearing, the Appeals Council ordered a remand and directed the administrative law judge to reconsider the treating source opinions and explain the weight given to this evidence. Rec. at p. 287.[9] The administrative law judge erred through failure to comply with the Appeals Council's instructions and the "treating source rule."

An administrative law judge must follow a specific process when he assesses a treating source's opinion. First, the judge must determine whether the opinion qualifies for controlling weight. *See Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (*per curiam*). This evaluation entails a determination of whether the opinion is "'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'" *Id.* (citation omitted). If not, the inquiry ends. *See id.* But if the opinion is well-supported, the judge must confirm that the opinion is consistent with other substantial evidence in the record. *See id.* If the opinion is deficient, it is not entitled to controlling weight. *See id.* At that point, the administrative law judge must weigh the opinion based on multiple factors[10] and "give

---

[9]   The remand order included additional instructions, but they are immaterial to the issues discussed below. *See* Rec. at pp. 287-88.

[10]   These factors include:

(1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon

good reasons" for the weight assigned to the opinion. *Id.* The judge may reject a treating source's opinion outright only on the basis of contradictory medical evidence. *See id.* If the judge rejects the opinion completely, he must give "'specific, legitimate reasons.'" *Id.* (citation omitted).

In its remand order, the Appeals Council directed the administrative law judge to follow these requirements. Rec. at p. 287; *see supra* p. 3. But the administrative law judge ignored pertinent portions of "Mental Impairment Questionnaire" reports authored by Drs. Fatema Haque, Nazish Sarfraz, Shehzad Niazi, and Rajendra Paladugu.[11]

Dr. Haque completed the questionnaire and noted that:

- Mr. Yarber had suffered from dysthymia, sleep and mood disturbance, social withdrawal or isolation, decreased energy, anhedonia or pervasive loss of interests, psychomotor agitation or retardation, feelings of guilt/worthlessness, and difficulty thinking or concentrating;[12] and

---

which an opinion is rendered; and (6) other factors brought to the [administrative law judge's] attention which tend to support or contradict the opinion.

*Robinson v. Barnhart*, 366 F.3d at 1082 (citing 20 C.F.R. § 404.1527 & Social Security Ruling 96-2p).

[11] The Defendant argues that the Plaintiff has waived the argument through a failure "to argue how the [administrative law judge's] decision is inconsistent with these physician's opinions." Social Security Response Brief at p. 5 (Jan. 31, 2007). The Court should reject this argument. In his brief, the Plaintiff identified the opinions at issue and explained how the administrative law judge had disregarded them in the decision. *See* Opening Brief of Plaintiff, Mike Yarber at pp. 3-8, 10-13 (Dec. 4, 2006).

[12] Rec. at pp. 179-80.

- the claimant's dysthymia had "affect[ed] his ability to work" and his depression had caused "poor concentration for work" and an inability to deal with stress at work.[13]

In rating Mr. Yarber's ability to perform certain activities, Dr. Haque stated that Mr. Yarber had "no useful ability" to:

- maintain attention for a two-hour segment;

- complete a normal workday and workweek without interruptions from psychologically based symptoms;

- perform at a consistent pace without an unreasonable number and length of rest periods; and

- deal with normal work stress and the stress of semiskilled or skilled work.

Rec. at pp. 182-83.

Finally, Dr. Haque stated that the Plaintiff had:

- suffered from slight restrictions of daily activities;

- experienced moderate difficulties in maintaining social functioning; and

- often suffered deficiencies of concentration, persistence, and pace resulting in a failure to complete tasks in a timely manner.

*Id.* at p. 183.

Dr. Sarfraz concurred with Dr. Haque's assessment and noted that the Plaintiff:

- had no useful ability to interact with the general public;

- had marked difficulties in maintaining social functioning; and

---

[13]   Rec. at pp. 181, 183.

- had experienced frequent deficiencies of concentration, persistence, and pace, resulting in a failure to complete tasks in a timely manner.

*Id.* at pp. 270-75.

Dr. Niazi concurred with Drs. Haque and Sarfraz, but found additional symptoms including emotional liability and delusions or hallucinations. *Id.* at pp. 430-31. Dr. Niazi noted that Mr. Yarber had experienced considerable improvement with his "psychotic symptoms." *Id.* at p. 431. But according to the doctor, Mr. Yarber continued to suffer from:

- moderate restrictions in activities of daily living and in maintenance of social functioning;

- frequent deficiencies of concentration, persistence, and pace, resulting in a failure to complete tasks in a timely manner; and

- repeated episodes of deterioration or decompensation in work or work-like settings which caused withdrawal or exacerbation of signs and symptoms.

*Id.* at pp. 432, 435.

Dr. Paladugu completed an assessment and found sleep and mood disturbance; emotional liability; delusions or hallucinations; oddities of thought, perception, speech, or behavior; perceptual disturbances; social withdrawal or isolation; blunt, flat or inappropriate affect; decreased energy; anhedonia or pervasive loss of interests; psychomotor agitation or retardation; paranoia or inappropriate suspiciousness; feelings of guilt/worthlessness; difficulty in thinking or concentrating; generalized persistent anxiety; and hostility and irritability. *Id.* at pp. 629-30.

Dr. Paladugu also noted that the Plaintiff suffered from serious limitations in:

- maintenance of attention for a two-hour segment;

- completion of a normal workday and workweek without interruption from psychologically based symptoms;

- performance at a consistent pace without unreasonable rest periods;

- ability to accept instructions and respond appropriately to criticism from supervisors;

- ability to get along with coworkers or peers without undue distraction or display of behavioral extremes;

- ability to deal with normal work stresses or the stress of semiskilled or skilled work; and

- ability to interact appropriately with the general public.

*Id.* at pp. 630, 632-33.

Finally, Dr. Paladugu stated that the Plaintiff had:

- experienced moderate restrictions in activities of daily living;

- suffered marked difficulties in social functioning;

- often suffered deficiencies in concentration, persistence, or pace; and

- experienced repeated episodes of deterioration or decompensation.

*Id.* at p. 634.

As acknowledged by the administrative law judge, the Appeals Council ordered reevaluation of the medical opinions under 20 C.F.R. § 404.1527 and Social Security Rulings

96-2p and 96-5p. *Id.* at p. 287; *see id.* at p. 21. But the administrative law judge failed to comply. For example, he summarized portions of Dr. Haque's assessment,[14] but failed to:

- recognize portions where Dr. Haque had found impairments or
- specify the weight accorded to the opinion.

*See id.* at pp. 21-27; *see also supra* pp. 4-5. Similarly, the administrative law judge omitted any reference to the opinions by Drs. Sarfraz, Niazi, and Paladugu. *See* Rec. at pp. 21-27.[15] These errors require reversal.

The Tenth Circuit Court of Appeals addressed a similar situation in *Robinson v. Barnhart*, 366 F.3d 1078 (10th Cir. 2004) (*per curiam*). There the plaintiff challenged the administrative law judge's evaluation of a treating psychiatrist's opinion. *See Robinson v. Barnhart*, 366 F.3d at 1080. The psychiatrist concluded that the plaintiff had suffered from numerous mental limitations that were severe enough to preclude employment. *See id.* at 1081. The administrative law judge stated that the psychiatrist's opinion was vague and did not identify specific symptoms or indicate the severity of each limitation. *See id.* at 1081. The appellate court concluded that the administrative law judge had erred through the failure

---

[14] The administrative law judge cited portions where Dr. Haque had noted "satisfactory" abilities. Rec. at p. 24; *see id.* at pp. 182-83.

[15] The decision refers to Exhibit 26F and notes that a "mental status examination [had been] conducted in November 2002." Rec. at p. 25. Although Dr. Paladugu's report comprises Exhibit 26F, the assessment was completed in November 2004 and the findings noted by the judge are incompatible with those noted by Dr. Paladugu. *Compare* Rec. at p. 25, *with id.* at pp. 629-34.

to specify the weight assigned to the doctor's opinion and to discuss the relevant factors set out in 20 C.F.R. §§ 404.1527 and 416.927. *Id.* at 1082-83. The court stated:

> The [administrative law judge's] analysis of Dr. Baca's opinion is deficient in several respects. First, the [administrative law judge] "failed to articulate the weight, if any, he gave Dr. [Baca's] opinion, and he failed also to explain the reasons for assigning that weight or for rejecting the opinion altogether." Although it is obvious from the [administrative law judge's] decision that he did not give Dr. Baca's opinion controlling weight, the [administrative law judge] never expressly stated that he was not affording it controlling weight, nor did he articulate a legitimate reason for not doing so.
>
> . . . .
>
> After failing to articulate why he did not give Dr. Baca's opinion controlling weight, the [administrative law judge] then failed to specify what *lesser* weight he assigned to Dr. Baca's opinion. Contrary to the requirements of Soc. Sec. R. 96-2p, the [administrative law judge] did not discuss any of the relevant factors set forth in 20 C.F.R.§§ 404.1527 and 416.927.

*Id.* (citations omitted; emphasis in original); *see supra* pp. 3-4.

*Robinson v. Barnhart* is controlling. For Dr. Haque, the administrative law judge failed to discuss critical opinions and to state the weight given to those that were discussed. *See* Rec. at pp. 21-27. Compounding the error, the judge ignored opinions from Drs. Sarfraz, Niazi, and Paladugu. Even though the judge was entitled to reject the opinions, his analysis could not end at that point. Instead, he had to weigh the opinions based on multiple factors

9

and "give good reasons" for the weight assigned to them. *See supra* pp. 3-4, 8-9. The administrative law judge failed in this regard,[16] and the omission was fatal.[17]

The error was especially significant because the Appeals Council had specifically required the missing discussion. *See supra* pp. 3-4; *see also Scott v. Chater*, 70 F.3d 1282, 1995 WL 694084, Westlaw op. at 6 (10th Cir. Nov. 24, 1995) (unpublished op.) (reversing in part based on noncompliance with the Appeals Council's remand instructions).

The administrative law judge failed to comply with the legal requirements for consideration of treating sources' opinions and, in doing so, violated the instructions of the Appeals Council. The errors require reversal.

IV.  THE APPROPRIATE REMEDY ON REMAND

With the reversal, the Court could remand to the SSA for further hearing or direct an award of benefits to the claimant. *See Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir. 1993). The Plaintiff seeks a remand for an award of benefits and two factors strongly support the request.

---

[16]  *See* Rec. at pp. 21-27.

[17]  *See Robinson v. Barnhart*, 366 F.3d 1078, 1085 (10th Cir. 2004) (*per curiam*) ("Because we conclude that the [administrative law judge] did not follow the correct legal standards in considering the opinion of claimant's treating physician, we reverse and remand for further proceedings.").

First, Mr. Yarber applied for benefits over seven years ago,[18] and further delay would be inequitable.[19]

Second, the SSA has already had a total of three opportunities to hear the evidence and render a legally sufficient decision. After the first two decisions, the Appeals Council cited treating source opinions on Mr. Yarber's mental functioning and expressly required consideration of them on remand. Rec. at pp. 214-15, 286-87. After these remands, the administrative law judge disregarded all psychiatric opinions suggesting limitations and discussed only those opinions reciting "negative findings." *Id*. at pp. 24-25. "The [SSA] is not entitled to adjudicate a case '*ad infinitum* until it correctly applies the proper legal standard and gathers evidence to support its conclusion.'" *Sisco v. United States Department of Health and Human Services*, 10 F.3d 739, 746 (10th Cir. 1993) (citation omitted).

The two factors should result in directions for payment of disability insurance benefits, rather than reconsideration by the SSA.

## V.   RECOMMENDATION

The Court should reverse and remand with directions for the SSA to award disability insurance benefits.

---

[18]   Rec. at pp. 62-64.

[19]   *See Nielson v. Sullivan*, 992 F.2d 1118, 1122 (10th Cir. 1993) (award directed when the claim was pending over four years); *Frey v. Bowen*, 816 F.2d 508, 518 (10th Cir. 1987) (award directed when more than six years had passed since the claimant's application for disability benefits).

VI.     NOTICE OF RIGHT TO OBJECT

Any party may file written objections with the Clerk of the United States District Court.  *See* 28 U.S.C. § 636(b)(1) (2000).  The objections are due April 18, 2007.  *See* W.D. Okla. LCvR 72.1(a).  If a party does not file written objections, he would waive any right to appellate review.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991); *see also Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

VII.    STATUS OF THE REFERRAL

The referral is terminated.

Entered this 28th day of March, 2007.

_____
Robert E. Bacharach
United States Magistrate Judge